UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Kenneth S. Daywitt, et al.,                                    Court File No. 14-cv-4526 (MJD/LIB)

                    Plaintiffs,

                                                               **ORDER AND**
        v.                                                     **REPORT AND RECOMMENDATION**

State of Minnesota, et al.,

                    Defendants.

---

        This matter is before the undersigned United States Magistrate Judge upon Defendants'
Motion to Dismiss First Amended Complaint or in the Alternative Stay the Case, [Docket No.
36]. On February 24, 2015, the Honorable Michael J. Davis, Chief United States District Judge
for the District of Minnesota, referred the present motion to the undersigned United States
Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). (Order
of Referral [Docket No. 37]). The Court held a motion hearing on April 16, 2015, and at that
time the Court instructed the parties to meet and discuss two outstanding, threshold issues: (1)
Plaintiffs' failure to serve a number of individual Defendants, and (2) Defendants' motion to stay
the present case in light of Plaintiff Daywitt's concurrent claims in Karsjens, et al. v. Minnesota
Department of Human Services, et al., No. 11-cv-3659 (DWF/JJK) (D. Minn.). (Minute Entry
[Docket No. 47]). The Court instructed the parties to file a joint letter with the Court clarifying
the two issues, and the Court took Defendant's motion under advisement on April 30, 2015, upon
receipt of the parties' joint letter, [Docket No. 48].

        For reasons discussed herein, the Court recommends **GRANTING in part** and
**DENYING in part** Defendants' Motion to Dismiss First Amended Complaint or in the
Alternative Stay the Case, [Docket No. 36].

## I.       BACKGROUND

Plaintiffs Kenneth S. Daywitt and Merel E. Bishop ("Plaintiffs"), individuals civilly committed to the Minnesota Sex Offender Program (MSOP), initiated the present case on October 28, 2014. (Compl. [Docket No. 1]). On February 10, 2015, after Defendants filed responsive motions, Plaintiffs filed a First Amended Complaint, [Docket No. 25], pursuant to Fed. R. Civ. P. 15(a)(1)(B).

Plaintiffs allege that Defendants, generally, have violated and continue to violate Plaintiffs' First and Fourteenth Amendment rights and have interfered and continue to interfere with Plaintiffs' religious rights, in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq*. (First Amended Compl. [Docket No. 25], ¶ 2). Specifically, Plaintiffs allege one count of violation of the First Amendment against Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, Ninneman, Anderson, Monson, Wolfgram, Fahland, Vargason, Kottke, Stecyk, Shelton, and Wagner in their individual capacities, pursuant to 42 U.S.C. § 1983; one count of violation of the First Amendment against the State of Minnesota, the Minnesota Department of Human Services, MSOP, and Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their official capacities, pursuant to 42 U.S.C. § 1983; one count requesting declaratory and injunctive relief against the State of Minnesota, the Minnesota Department of Human Services, MSOP, and the individual Defendants in their official capacities; and one count of violation of RLUIPA against the State of Minnesota, the Minnesota Department of Human Services, MSOP, and the individual Defendants in their individual and official capacities, pursuant to 42 U.S.C. § 2000cc. (Id. at Counts 1-4). Plaintiffs demand money damages and declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1983, 1988, and 2000cc. (Id. ¶ 1).

Plaintiffs practice Orthodox Judaism. (Id. ¶ 10). Plaintiffs allege that their religious beliefs require Plaintiffs to wear a yarmulke at all times and a suit coat "while in public." (Id.) Plaintiffs allege that MSOP Policy 303.020 (Client Hygiene/Dress Code) ("the Policy") violates Plaintiffs' constitutional and religious rights because it prohibits Plaintiffs from complying with these aspects of their religion. The Policy provides, in relevant part, that MSOP clients may not possess or wear any clothing resembling an MSOP staff uniform or any clothing "possibly causing them to be mistaken for any MSOP employee[,]" *including blazers, sport coast, or suits*. (Cariveau Aff. [Docket No. 39], Ex. 1). However, as of November 4, 2014, MSOP Policy 303.020 *permits* Plaintiffs to wear a yarmulke at all times. (Id.; First Amended Compl. [Docket No. 25], ¶ 14).

Plaintiffs allege that the inability to comply with aspects of their religion while civilly committed "substantially interferes with and substantially burdens Plaintiffs' ability to practice their Jewish faith . . . [and] causes Plaintiffs to experience depressed mood, emotional distress, feelings of inadequacy, diminished self-esteem, and diminished quality and enjoyment of life." (Id. ¶¶ 11, 12). Plaintiffs argue that the restrictions have "no rational or reasonable security basis." (Id. ¶ 19).

Plaintiffs allege that Defendants have reprimanded, criticized, and disciplined Plaintiffs for exercising their religious right to wear a yarmulke and/or suit coat. (Id. ¶¶ 21-23). Plaintiffs have received "numerous" Behavioral Expectation Reports as a result of wearing a yarmulke or suit coat in violation of the Policy. (Id. ¶ 23). Plaintiffs generally allege that the seventeen (17) individually identified Defendants are "directly responsible for the violations of Plaintiffs' constitutional rights . . . [and] are responsible for creating, implementing, and enforcing MSOP policies and procedures related to Plaintiffs' constitutional and/or religious rights[.]" (Id. ¶ 8).

## II.   DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE STAY THE CASE, [DOCKET NO. 36]

Defendants move the Court for an order dismissing Plaintiffs' First Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Defs.' Mot. to Dismiss [Docket No. 36]). In the alternative, Defendants move the Court for an order staying Plaintiffs' claims pending resolution of <u>Karsjens</u>, No. 11-cv-3659 (DWF/JJK). (<u>Id.</u>)

### A.   Standards of Review

### 1.   Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction and prompts the Court to examine whether it has the authority to decide the claim(s). <u>Uland v. City of Winsted</u>, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008). "A court must dismiss an action over which it lacks subject matter jurisdiction." <u>Pomerenke v. Bird</u>, No. 12-cv-1757 (DSD/JJG), 2014 WL 30363, at *1 (D. Minn. Jan. 3, 2014) (citing Fed. R. Civ. P. 12(h)(3)).

A Rule 12(b)(1) motion may challenge the sufficiency of a pleading on its face or the factual truthfulness of its allegations. <u>See</u> <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993); <u>Osborn v. United States</u>, 918 F.2d 724, 729, n.6 (8th Cir. 1990). In the event the motion challenges the pleading's factual allegations, courts may consider materials outside of the pleadings, and no presumptive truthfulness attaches to the pleading's factual allegations. <u>Osborn</u>, 918 F.2d at 729-30, n.6.

### 2.   Failure to State a Claim Upon Which Relief May be Granted

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P.

4

8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, "[courts] look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999). Courts draw all reasonable inferences in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

Courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible." See id. at 679-81. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street Fin., Inc. v. Pump Media, Inc., No. 09-cv-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).

**3.      Staying the Case**

A federal district court's power to stay an action pending on its docket is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Skidmore v. ACI Worldwide, Inc., 2008 WL 4186247, at *1 (D. Neb. Sept. 9, 2008) (citing Landis v. North Am. Co., 299 U.S. 248, 254 (1936); see Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005) ("A district court has discretionary power to stay proceedings in its own court under Landis."); Capitol Indem. Corp. v. Haverfield, 218 F.3d 872, 874 (8th Cir. 2000)). However, the party requesting a stay must demonstrate hardship or inequity attributable to being forced to move forward if there is "even a fair possibility that the stay for which he prays will work damage to someone else." Lockyer, 398 F.3d at 1109; Jones v. Clinton, 72 F.3d 1354, 1364 (8th Cir. 1996) ("Traditionally, an applicant for a stay has the burden of showing specific hardship or inequity if he or she is required to go forward."). "Accordingly, the court must balance the consequences of imposing a stay on the opposing party against the consequences of proceeding on the movant." Skidmore, 2008 WL 4186247, at *2 (citing Jones, 72 F.3d at 1365).

Federal courts have considered and weighed various factors when determining whether to stay a particular case. TE Connectivity Networks, Inc. v. All Systems Broadband, Inc., No. 13-cv-1356 (ADM/FLN), 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013). However, the decision is generally practical and largely discretionary. Id.

**B.    Plaintiffs' claims for declaratory and/or injunctive relief arising from Policy 303.020's no-longer-in-effect yarmulke prohibition are necessarily moot.**

As a threshold issue, any and all claims for declaratory and/or injunctive relief arising from the Policy's no-longer-in-effect yarmulke prohibition are necessarily moot. "In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated." Beaulieu v. Ludeman, 690 F.3d 1017, 1024 (8th Cir. 2012). When an inmate is *no longer subject to challenged conditions*, claims arising from the conditions are necessarily moot. Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (citing Preiser v. Newkirk, 422 U.S. 395, 402 (1975) (the question for determining whether a request for declaratory relief has become moot is whether the facts alleged show a substantial controversy "*of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*")). "A court properly dismisses a claim as moot 'if it has lost its character as a *present, live* controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract questions of law.'" Beaulieu, 690 F.3d at 1024 (citation omitted) (emphasis added).

A *narrow* exception to the general rule applies when (1) the challenged condition is too brief in duration to be fully litigated prior to cessation or expiration; and (2) it is reasonably likely that the complaining party will be subject to the same action again. Smith, 190 F.3d at 855.

In the present case, Plaintiffs' First Amended Complaint explicitly recognizes that as of November 4, 2014, Policy 303.020 *permits* MSOP residents, including Plaintiffs, to wear yarmulkes at all times. (First Amended Compl. [Docket No. 25], ¶ 14). The challenged conduct has ceased. Plaintiffs have not demonstrated, much less sufficiently pled, that the narrow exception to the general rule applies in the present case. To the contrary, Plaintiffs' counsel *concedes* that claims for declaratory and/or injunctive relief arising from Policy 303.020's no-

longer-in-effect yarmulke prohibition are necessarily moot and subject to dismissal. (Letter to Magistrate Judge [Docket No. 48], at 1).

In this respect, the Court recommends **GRANTING** Defendants' motion to dismiss and **DISMISSING** any and all claims for declaratory and/or injunctive relief arising from the Policy's no-longer-in-effect yarmulke prohibition as moot.[1]

### C.   Plaintiffs have not served nine (9) of the individual Defendants.

The Court takes this opportunity to address a second threshold issue. Defendants represent, and the present record before the Court indicates, that Plaintiffs *have not served* Defendants Anderson, Monson, Wolfgram, Fahland, Vargason, Kottke, Stecyk, Shelton, and Wagner. (Defs.' Mem. [Docket No. 38], at n.1). Although the parties have indicated that these Defendants intend to *waive* service and join in the present motion, Plaintiffs have yet to demonstrate service or *waiver* of service. (Letter to Magistrate Judge [Docket No. 48], at 1).

Plaintiffs have not formally joined Defendants Anderson, Monson, Wolfgram, Fahland, Vargason, Kottke, Stecyk, Shelton, and Wagner in the present case, and, as a result, these Defendants do not join in the present motion before the Court. The present motion does not and *cannot* move to dismiss or otherwise address Plaintiffs' claims as alleged against these not-yet-served Defendants. Accordingly, Plaintiffs' claims as alleged against Defendants Anderson, Monson, Wolfgram, Fahland, Vargason, Kottke, Stecyk, Shelton, and Wagner are not subject to the present Order and Report and Recommendation. In fact, due to the present apparent lack of service as of the date of this Order and Report and Recommendation, there is no action the Court could take at this time in regard to these not-yet-served Defendants.[2]

---

[1] The Court addresses any and all claims for monetary damages arising from prior instances of enforcement of the yarmulke prohibition in the remaining sections of the present Report and Recommendation.

[2] The Court takes this opportunity to remind Plaintiffs that the Federal Rules of Civil Procedure require plaintiffs to demonstrate proof of service "within 120 days after the complaint is filed, [or] the court – on motion or on its own

**D.      Count 1: Violation of the First Amendment as alleged against Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their individual capacities**

The Court turns to Plaintiffs' remaining claims. Count 1, on its face, appears to allege three discrete First Amendment violations by the individual Defendants in their individual capacities, arising from enforcement of the Policy. However, at the April 16, 2015, motion hearing, Plaintiffs' counsel clarified that the "freedom of speech and expression" allegations and the "freedom of exercise" allegations are virtually indistinguishable and arise from the individual Defendants' enforcement of the Policy. Count 1, as clarified at the motion hearing and understood in the larger context of the First Amended Complaint, thus alleges *two* discrete First Amendment violations by the individual Defendants in their individual capacities: violation of First Amendment freedoms attributable to the Policy, and retaliation arising from enforcement of the policy.[3]

To state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was *directly* and *personally* involved in an alleged *constitutional violation.* Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983

---

after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Plaintiffs filed their First Amended Complaint, [Docket No. 25], on February 10, 2015. Plaintiffs risk summary dismissal in the near future of Defendants Anderson, Monson, Wolfgram, Fahland, Vargason, Kottke, Stecyk, Shelton, and Wagner, for failure to effect service and failure to prosecute in the event they do not demonstrate that timely service was effected by June 10, 2015.

[3] Although the First Amended Complaint contains generic references to Fourteenth Amendment violations and potential equal protection arguments, at the April 16, 2015, motion hearing, Plaintiffs' counsel specifically represented that the First Amended Complaint does *not* allege any independent Fourteenth Amendment violations.

requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights.").[4]

In addition to pleading individual involvement, a plaintiff must sufficiently plead a *violation of a specific constitutional right*.

### 1.   Plaintiffs have not pled a retaliation claim upon which relief may be granted against the individual Defendants in their individual capacities.

To state a claim for retaliation in violation of the First Amendment, "a plaintiff must show: (1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity." Evenstad v. Herberg, No. 12-cv-3179 (RHK/JJG), 2014 WL 107718, at *3 (D. Minn. Jan. 10, 2014) (citing Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "Failure to satisfy any of the three elements results in the failure of the claim." Evenstad, 2014 WL 107718, at *3 (citing Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004)); see also Beaulieu, 690 F.3d at 1025.

Plaintiffs fail to plead sufficient facts to state a retaliation claim upon which relief may be granted. Plaintiffs only conclusorily allege that Defendants retaliated against Plaintiffs' protected First Amendment activity by "criticizing and disciplining" Plaintiffs for violating Policy 303.020. However, Plaintiffs allege *no specific facts* that even suggest that Defendants' vaguely identified adverse actions were at all motivated by any protected activity *as opposed to a simple rules violation*. At the April 16, 2015, motion hearing, Plaintiffs' counsel explicitly stated that the First Amended Complaint does not allege *any* religious or otherwise unconstitutional animus

---

[4] Claims premised on a theory of vicarious liability do *not* state a claim for relief pursuant to 42 U.S.C. § 1983, Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), as the doctrine of *respondeat superior* does not apply in Section 1983 actions. Monnell v. Dep't of Soc. Servs., 436 U.S. 659, 691 (1978).

attributable to any of the Defendants and that Count 1's retaliation claim arises from *pure enforcement* of the allegedly unconstitutional Policy. The First Amended Complaint does not allege *any* discriminatory motivation. Rather, Plaintiffs simply allege that various individual Defendants "punished" and "disciplined" Plaintiffs in the course of enforcing Policy 303.020. (See First Amended Compl. [Docket No. 25], ¶¶ 21-23). See Osborne v. Grussing, 477 F.3d 1002, 1005 (8th Cir. 2007) ("To prevail in an action for First Amendment retaliation, plaintiff must show a *causal connection* between a defendant's *retaliatory animus* and plaintiff's subsequent injury.") (emphasis added).

Because Plaintiffs fail to allege *any* facts that indicate that "the adverse action was motivated at least in part by the protected activity," the Court recommends **GRANTING** Defendants' motion to dismiss Count 1's retaliation claim as alleged against Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their individual capacities.

> **2.      Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman are entitled to qualified immunity with respect to Count 1's free exercise claim.**

Count 1 also alleges that the individual Defendants, in their individual capacities, violated Plaintiffs' First Amendment freedoms by enforcing an unconstitutional policy. Regardless of whether Plaintiffs have pled sufficient facts to implicate individual, direct, personal involvement by each of the identified Defendants, Defendants are entitled to qualified immunity.

As briefly discussed, Plaintiffs do not clearly distinguish a possible freedom of speech/expression claim from the more explicit free exercise claim. In light of Plaintiffs' counsel's representations at the April 16, 2015, motion hearing, and reading Count 1 within the larger context of the First Amended Complaint, the Court finds that Count 1 attempts to allege a

violation of Plaintiffs' freedom of *exercise*: the wearing of a yarmulke at all times and a suit coat while in public. (First Amended Compl. [Docket No. 25], ¶¶ 2, 16, 21).

To successfully plead a violation of the First Amendment's freedom of exercise, Plaintiffs must plead facts sufficient to demonstrate that Defendants "placed a substantial burden on [Plaintiffs'] ability to practice [their] religion." Pittman v. Jesson, No. 12-cv-1410 (SRN/TNL), 2014 WL 4954286, at *15 (D. Minn. Sept. 30, 2014) (quoting Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008)). To "substantially burden" the freedom of exercise, a regulation or policy must: (1) "significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs"; (2) "meaningfully curtail a person's ability to express adherence to his or her faith"; or (3) "deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." Karsjens v. Jesson, 6 F. Supp. 3d 916, 938 (quoting Patel, 515 F.3d at 813 (quoting, in turn, Murphy v. Mo. Dep't. of Corrections, 372 F.3d 979, 988 (8th Cir. 2004))).

Specifically with respect to incarcerated or civilly committed individuals, the Eighth Circuit has stated:

> Although prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights in light of the needs of the penal system. Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting. Turner v. Safley, 482 U.S. 78, 81, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987). A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89, 107 S. Ct. 2254, 96 L.Ed.2d 64. Turner sets forth four factors that courts should consider in making that determination. First, we ask whether there is a "valid rational connection" between the prison regulation and the government interest justifying it. Id. at 89-90, 482 U.S. 78, 107 S. Ct. 2254, 96 L.Ed.2d 64. Second, we consider whether there is an alternative means available to the prison inmates to exercise the right. Id. at

90, 482 U.S. 78, 107 S. Ct. 2254, 96 L.Ed.2d 64. Third, we examine whether an accommodation would have a "significant 'ripple effect'" on the guards, other inmates, and prison resources. Id. Fourth, we evaluate whether there is an alternative that fully accommodates the prisoner "at de minimus cost to valid penological interests." Id. at 90-91, 482 U.S. 78, 107 S. Ct. 2254, 96 L.Ed.2d 64.

. . .

In analyzing [a free exercise] claim, we consider the threshold issue of whether the challenged governmental action "infringes upon a sincerely held religious belief," Hamilton v. Schriro, 74 F.3d 1545, 1550 (8th Cir. 1996), and then apply the Turner factors to determine if the regulation restricting the religious practice is "reasonably related to legitimate penological objectives." O'Lone v. Estate of Shabazz, 482 U.S. 342, 353, 107 S. Ct. 2400, 96 L.Ed.2d 282 (1987). We accord great deference to the judgment and expertise of prison officials, "particularly with respect to decisions that implicate institutional security." Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004).

Murphy, 372 F.3d at 982-83. In the civil commitment context, "the Court considers each of Plaintiffs' First Amendment claims in light of appropriate therapeutic interests as well as relevant safety and security concerns." Karsjens, 6 F. Supp. 3d at 937. Historically, this district has adopted a "modified" version of the Turner test, discussed above, when determining whether an MSOP policy is "reasonably related to legitimate institutional and therapeutic interests." Pittman, 2014 WL 4954286, at *15 (citing Ivey v. Mooney, No. 05-cv-2666 (JRT/FLN), 2008 WL 4527792, at *5 (D. Minn. Sept. 30, 2008)). However, at the present Rule 12(b)(6) juncture, the Court need not determine, definitively, the precise standard to apply. "Instead, the Court must only determine if Plaintiff has stated a claim for infringement of his religious freedom under the First Amendment." Pittman, 2014 WL 4954286, at *15 (citing Karsjens, 6 F. Supp. 3d at 937 (explaining that "regardless of whether the Turner standard or a modified Turner standard

13

applies" the court can determine whether the plaintiff's allegations state an actionable constitutional claim)).

In <u>Pittman</u>, the Honorable Susan R. Nelson, United States District Judge for the District of Minnesota, held that the plaintiff had successfully pled a plausible free exercise claim because he alleged that applicable MSOP policies substantially burdened the practice of a number of his religious beliefs. <u>Pittman</u>, 2014 WL 4954286, at *23-*25. The Court arrives at the same conclusion in the present case: Plaintiffs have successfully pled a plausible free exercise claim because they have explicitly alleged that MSOP Policy 303.020 substantially burdens Plaintiffs' exercise of religion – namely, the ability to wear a suit coat while in public and, at least in the past, the ability to wear a yarmulke at all times.[5]

However, in <u>Pittman</u>, despite the fact that the plaintiff had successfully pled a plausible free exercise claim, Judge Nelson ultimately held that the individual defendants were entitled to qualified immunity (with respect to claims alleged against the individual defendants in their individual capacities) because a civilly committed patient's right to wear religious articles is not clearly established. <u>Id.</u> at *24-*25.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999). The contours of the right(s) at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless

---

[5] Although the Court recommends dismissing any and all claims for declaratory and/or injunctive relief arising from the no-longer-in-effect yarmulke prohibition as necessarily moot, <u>see</u> section II.B., the Court addresses any and all claims for *monetary* damages arising from *prior* instances of enforcement of the yarmulke prohibition in this and other remaining sections of the present Report and Recommendation.

the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 641 (1987).

After determining that Plaintiffs have sufficiently pled a plausible free exercise claim, "the Court need not address whether [MSOP's security concerns that may temper full enjoyment of First Amendment rights] in fact exist. Rather, the Court need only determine whether in a civil commitment setting, it is clearly established that Plaintiff is entitled to the religious rights that he alleges." Pittman, 2014 WL 4954286, at *24. Pittman expressly held that a civilly committed individual's religious rights are *not* clearly established. Id. (citing Rogers v. Scurr, 676 F.2d 1211, 1216 (8th Cir. 1982) (holding that "no constitutional right of the prisoners was violated by the prohibition on wearing prayer caps and robes outside religious services"); Bulter-Bey v. Frey, 811 F.2d 449, 451 (8th Cir. 1987) (upholding a prison regulation that prohibited wearing "headgear in the prison visiting room, dining room, chapel, school , and administration building" because of a concern over smuggling contraband); c.f., Jihad v. Fabian, No. 09-cv-1604 (SRN/LIB), 2011 WL 1641767, at *17 (D. Minn. May 2, 2011) (citing Rogers and holding that a prison regulation limiting when plaintiff could wear his Kufi did not substantially burden the plaintiff's religious exercise)).

As in Pittman, the Court finds that Plaintiffs' right to wear a suit coat while in public and right to wear a yarmulke at all times were far from being *clearly* established during the time frames at issue and that, as a direct result, Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman are entitled to qualified immunity with respect to Count 1's free exercise claim.

The Court recommends **GRANTING** Defendants' motion to dismiss with respect to Count 1 as alleged against Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their individual capacities.[6]

> **E.      Count 2: Violation of the First Amendment as alleged against the State of Minnesota, the Minnesota Department of Human Services, MSOP, and Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their official capacities**

Count 2 alleges two discrete constitutional violations by the entity Defendants and eight individual Defendants in their official capacities, arising from enforcement of Policy 303.020: violation of the First Amendment's freedom of exercise and a failure to train.

> **1.      Eleventh Amendment Immunity**

The Eleventh Amendment to the United States Constitution prohibits lawsuits against a state unless the state has unequivocally consented to suit or Congress has abrogated the state's immunity for a particular federal cause of action. Hadley v. N. Ark. Cmty. Technical Coll., 76 F.3d 1437, 1438 (8th Cir. 1996) (citations omitted); Faibisch v. Univ. of Minn., 304 F.3d 797, 800 (8th Cir. 2002). States are entitled to Eleventh Amendment immunity from claims alleged pursuant to 42 U.S.C. § 1983; a state is not a "person" within the meaning of Section 1983. Hadley, 76 F.3d at 1438 ("Section 1983 does not override Eleventh Amendment immunity."); Will v. Mich. Dep't of State Police, 491 U.S. 58, 65 (1989). Eleventh Amendment immunity extends to state agencies. Minn. Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 815 (D. Minn. 2010) (citing Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147 (1981)).

---

[6] The Court, therefore, need not determine whether Plaintiffs have sufficiently pled individual involvement by each of the individual Defendants to support their 42 U.S.C. § 1983 free exercise claim in Count 1 against these Defendants in their individual capacities.

Similarly, claims against a state employee in that employee's official capacity constitute claims against the public employer, namely, the state itself. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)); see also Uland, 570 F. Supp. 2d at 1119-20 (citing Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004)). "The law is clear that, 'the real party in interest in an official capacity suit is the governmental entity and not the named official.'" Semler v. Ludeman, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *6 (D. Minn. Jan. 8, 2010) (citing Baker, 501 F.3d at 925 (quoting Hafer v. Melo, 502 U.S. 21, 25 (1999))). However, "[i]t is well-settled that in a 42 U.S.C. § 1983 action, the Eleventh Amendment [only] precludes an award of money damages against a state official acting in his or her official capacity. A plaintiff may maintain an action against a government official if the complaint seeks only injunctive or prospective relief." Semler, 2010 WL 145275, at *7 (citations omitted).

As MSOP and/or Minnesota Department of Human Services employees, the individually identified Defendants implicated in Count 2 (namely, Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman) are state officials. The Court necessarily construes Count 2 – alleged against the State of Minnesota, the Minnesota Department of Human Services, MSOP, and the individually identified Defendants in their official capacities – as alleged against the employing entity, the State of Minnesota.

The present record before the Court is devoid of any evidence or authority demonstrating either the state's consent to suit or congressional abrogation of the state's sovereign immunity. Accordingly, the Court recommends that Count 2 as alleged against the State of Minnesota, the Minnesota Department of Human Services, MSOP, and, to the extent Plaintiffs seek *monetary damages* from the State, its Agencies or Departments, or any and all individually identified state

employees sued in their official capacities[7] be dismissed with prejudice for lack of subject matter jurisdiction. See Id. at *6 ("To the extent Plaintiff asserts claims against the Minnesota Department of Human Services, MSOP, or individually identified State Defendants for actions taken in their official capacities pursuant to 42 U.S.C. § 1983, the claims must be dismissed with prejudice.").

Count 2 survives as alleged against Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their official capacities, but only to the extent Plaintiffs seek *injunctive relief*.[8]

**2.    Plaintiffs have not pled a failure to train claim upon which relief may be granted against Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their official capacities.**

In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), the United States Supreme Court held that 42 U.S.C. § 1983 liability may generally attach for constitutional violations resulting from a *failure to train* municipal employees. Id. at 388 ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). The Eighth Circuit has since identified three elements necessary to plead such a Section 1983 failure to train claim: (1) that the government entity's training practices were inadequate; (2) that the government entity was deliberately indifferent to the rights of others in adopting the training practices, such that their failure reflects a deliberate or conscious choice by the government entity; and (3) that the alleged deficiencies in the training practices caused the plaintiff's injury. B.A.B. v. Bd. of Educ. of St. Louis, 698 F.3d 1037, 1040 (8th Cir. 2012) (citing Parrish v. Ball,

---

[7] This analysis and recommendation does not apply to Count 2 to the extent Plaintiffs seek *injunctive* relief against any individually identified state employees sued in their official capacities.

[8] It necessarily follows that because Count 2 survives only to the extent Plaintiffs seek *injunctive and/or declaratory relief*, all claims arising from the no-longer-in-effect yarmulke prohibition are necessarily moot, and Count 2 survives only with respect to claims arising from Policy 303.020's suit coat prohibition. See section II.B.

594 F.3d 993, 997 (8th Cir. 2010) (citing, in turn, <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1076 (8th

Cir. 1996) (quoting <u>City of Canton</u>, 489 U.S. at 389))). Essentially, a plaintiff "must prove that

'the need for more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that the policymakers of the [government entity] can reasonably

be said to have been deliberately indifferent to the need.'" <u>B.A.B.</u>, 698 F.3d at 1040 (quoting

<u>Parrish</u>, 594 F.3d at 998). "'Deliberate indifference' entails a level of culpability equal to the

criminal law definition of recklessness[,]" and necessarily exceeds mere common law

negligence. <u>Bender v. Regier</u>, 385 F.3d 1133, 1137 (8th Cir. 2004).

Highlighting the stringent nature of the standard, <u>Canton</u> specifically cautioned that the

fact "[t]hat a particular [municipal employee] may be unsatisfactorily trained will not alone

suffice to fasten liability on the city, for the [employee's] shortcomings may have resulted from

factors other than a faulty training program. It may be, for example, that an otherwise sound

program has occasionally been negligently administered." <u>City of Canton</u>, 489 U.S. at 390-91

(internal citations omitted).

In the present case, the Plaintiffs fail to allege *any* facts sufficient to specifically assert a

failure to train claim. Plaintiffs do not allege any facts concerning any of MSOP's "training

practices," any facts indicating that the individual Defendants were *deliberately indifferent* to

*imminent, on-going constitutional violations*, or any facts to even suggest that the need for

alternative training was "so obvious" so as to implicate indifference rising to the level of

*criminal recklessness*. To the contrary, Plaintiffs merely and in wholly conclusory fashion allege

that "policies and/or customers" exhibited "deliberate indifference towards the constitutional

rights of MSOP clients," and that Defendants "inadequately supervise[d] and train[ed]" their

employees. (First Amended Compl. [Docket No. 25], ¶¶ 33-35). These generic, conclusory

allegations are insufficient to sustain an independent failure to train claim. <u>See, e.g.</u>, <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 556-67.

The Court recommends **GRANTING** Defendants' motion to dismiss with respect to Count 2's failure to train claim as alleged against Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their official capacities.

>    3.    **Count 2's remaining First Amendment claim survives _only_ as to injunctive and declaratory relief as alleged against Defendants Jesson, Johnston, and Moser in their official capacities.**

As discussed in section II.D.2., <u>supra</u>, Plaintiffs have successfully pled a plausible free exercise claim because they have alleged that MSOP Policy 303.020 substantially burdens Plaintiffs' exercise of religion as to wearing of a suit coat while in public.[9] The Court now determines whether Plaintiffs have successfully pled the claim against Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, Benoit, Kulas, and Ninneman in their official capacities.

>    To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to _an unconstitutional governmental policy or custom_, or that he or she possessed _final authority_ over the subject matter at issue and used that authority in an unconstitutional manner.

<u>Nix v. Norman</u>, 879 F.2d 429, 433 (8th Cir. 1989) (internal citation omitted) (emphasis added). Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Graham</u>, 473 U.S. at 165-66 (quoting <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690, n.55 (1978)). The entity itself – in this case,

---

[9] As articulated in previous sections, all claims for injunctive and/or declaratory relief arising from the no-longer-in-effect yarmulke prohibition are necessarily moot, and, as a result, Count 2, to the extent it seeks injunctive and/or declaratory relief, survives only with respect to claims arising from Policy 303.020's suit coat prohibition. <u>See</u> section II.B. Also as discussed in the previous section, Count 2, to the extent it seeks _monetary_ damages, necessarily fails. <u>See</u> section II.E.1.

the State of Minnesota – must be the "moving force" behind the alleged deprivation of rights. Graham, 473 U.S. at 166; see also Burlison v. Springfield Pub. Schs., 708 F.3d 1034, 1041 (8th Cir. 2013) (to plead an official capacity Section 1983 claim, a plaintiff "must show that a constitutional violation was committed pursuant to an official policy or custom and that such policy or custom was the moving force behind plaintiff's injury).

The Court returns to Pittman, supra, wherein Judge Nelson expressly held that the plaintiff had successfully pled a freedom of exercise claim against Defendant Jesson in her official capacity as a result of Jesson's statutory "oversight" and MSOP policy implementation responsibilities: "Jesson's statutory duty to 'adopt rules to govern the operation' of the MSOP, Minn. Stat. Ann. § 246B.04, are sufficient to hold her accountable for formal rules that allegedly infringe upon Plaintiff's free exercise rights." Pittman, 2014 WL 4954286, at *16. Judge Nelson held similarly with respect to Defendants Johnston and Moser. Id. at *18-*19 ("If Plaintiff is successful in proving his free exercise claims, Johnston's statutory duty to administer the MSOP and make MSOP-wide policy decisions is sufficient to give rise to § 1983 liability[.]" . . . "Plaintiff contends that as the Director of MSOP, Moser 'created and implemented' these policies[] [and] [t]he Court finds that at this stage of the case, Pittman has pled sufficient facts to allege Moser's direct involvement with the allegedly discriminatory policies.").

In the present case, Plaintiffs generally allege that all individually identified Defendants are "responsible for creating, implementing, and enforcing MSOP policies and procedures related to Plaintiffs' constitutional and/or religious rights[.]" (First Amended Compl. [Docket No. 25], ¶ 8). More specifically, Plaintiffs allege that Defendants Jesson, Johnston, Moser, Basaraba, Zimmerman, and Benoit "are responsible for and are personally involved in drafting, editing, overseeing, implementing, and enforcing official MSOP policies and procedures,

including MSOP Policy 303.020 . . . pursuant to the nature and responsibilities of their respective titles as supervisors and top policy-making officials of the DHS and MSOP." (Id. ¶ 13). In light of these allegations, and relying on Pittman, the Court finds that Plaintiffs have sufficiently alleged a 42 U.S.C. § 1983 free exercise claim arising out of the prohibition on wearing a suit coat while in public against Defendants Jesson, Johnston, and Moser in their official capacities; the Court may infer that Jesson (Commissioner of DHS), Johnston (Executive Director of MSOP), and Moser (Director of MSOP) possess the requisite supervisory authority to be personally implicated in their official capacities. See generally Pittman, supra. The Court recommends **DENYING** Defendants' motion to dismiss with respect to Count 2's free exercise claim as alleged against Defendants Jesson, Johnston, and Moser in their official capacities, to the extent Plaintiffs seek injunctive and/or declaratory relief.

However, Count 2 also by its allegations seeks to implicate Defendant Basaraba, Security Program Manager of MSOP; Defendant Zimmerman, Security Director of MSOP; Defendant Benoit, MSOP's Complex One Program Manager; Defendant Kulas, MSOP's Unit 1E Unit Director; and Defendant Ninneman, MSOP's Unit 1D Unit Director. (First Amended Compl. [Docket No. 25], ¶ 8). Beyond conclusory allegations, Plaintiffs allege *no facts* to even suggest that these Defendants were directly involved with or possessed final authority over the implementation of Policy 303.020. To the contrary, Defendants Zimmerman, Basaraba, Benoit, Kulas, and Ninneman's job titles suggest that they are *not* top policy-making officials and are *not* directly involved in drafting and promulgating the policy at issue in the present case. Rather, they are simply involved in the operations of the MSOP subject to the dictates of Policy 303.020. For this reason, the Court recommends **GRANTING** Defendants' motion to dismiss with respect to Count 2's free exercise claim concerning the prohibition on wearing a suit coast while in

public as alleged against Defendants Zimmerman, Basaraba, Benoit, Kulas, and Ninneman in their official capacities.

**F.      Count 3 is not an independent cause of action.**

In Count 3 of Plaintiffs' First Amended Complaint, Plaintiffs request declaratory and/or injunctive relief against the State of Minnesota, the Minnesota Department of Human Services, MSOP, and the individual Defendants in their official capacities, "[b]ased on the above factual allegations[.]" (First Amended Compl. [Docket No. 25], ¶ 39).

Count 3 is *not* an independent cause of action. Rather, it serves simply as a request for a specific form of relief that is *dependent* on the Court first determining that Policy 303.020 is unconstitutional, as alleged in Counts 1 and 2. Count 3 lives and dies by the success and failure of Counts 1 and 2, and the Court will not evaluate its merits as an independent cause of action. See Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) ("the Declaratory Judgment Act . . . does not provide an independent basis for federal jurisdiction") (quoting Victor Foods, Inc. v. Crossroads Econ. Dev., 977 F.2d 1224, 1227 (8th Cir. 1992) (citation omitted)). See also Essling's Homes Plus, Inc. v. City of St. Paul, 356 F. Supp. 2d 971, 984 (D. Minn. 2004) ("A successful action for declaratory judgment requires a viable underlying cause of action.").

**G.      Count IV: RLUIPA Violation as alleged against the State of Minnesota, the Minnesota Department of Human Services, MSOP, and the individual Defendants in their individual and official capacities**

Finally, Count 4 alleges that Policy 303.020, "through its prohibitions against Yarmulkes and suit coats, violates RLUIPA by imposing a substantial burden on Plaintiff's [sic] ability to practice their religion without a compelling governmental interest and not through least restrictive means." (First Amended Compl. [Docket No. 25], ¶ 44).

RLUIPA imposes a stricter standard of review than constitutional free exercise claims. Jihad v. Fabian, No. 09-cv-1604 (SRN/LIB), 2011 WL 1641885, at *7 (D. Minn. Feb. 17, 2011) report and recommendation adopted, 2011 WL 1641767. Section 3 of RLUIPA provides, in part:

> (a) General rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on the person –
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

Id. Congress intended RLUIPA to eliminate frivolous or arbitrary barriers to an institutionalized individual's religious exercise, albeit with the expectation "that courts entertaining complaints under § 3 would accord due deference to the experience and expertise of prison and jail administrators." Id. at *8 (quoting Cutter v. Wilkinson, 544 U.S. 709, 714 (2005)).

To state a claim under RLUIPA, Plaintiffs must plead that the relevant exercise of religion is "grounded in a sincerely held religious belief" and that the policy at issue "substantially burden[s] the exercise of religion." Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). In Holt, the United States Supreme Court held that a prison grooming policy violated RLUIPA insofar as it prevented the plaintiff (an inmate at the facility) from growing a 1/2-inch beard in accordance with his religious beliefs.

At the present Rule 12(b)(6) motion juncture, the Court finds that Plaintiffs' First Amended Complaint does indeed sufficiently plead a RLUIPA violation. Plaintiffs expressly allege that Policy 303.020 substantially burdens their exercise of Orthodox Judaism insofar as it prevents them from wearing suit coats while in public, as well as insofar as it, at one time,

prevented them from wearing yarmulkes (to the extent claims arising from the no-longer-in-effect yarmulke prohibition seek only monetary damages for prior infringements, see section II.B.). However, the Court must determine whether Plaintiffs have successfully pled a RLUIPA claim against *all* implicated Defendants.

"RLUIPA conditions the state's acceptance of federal funds, in part, on its consent to suit for 'appropriate relief.' 42 U.S.C. § 2000cc-2(a). . . . [T]his phrase plainly creates a private cause of action against the state for at least some form of relief." Van Wyhe v. Reisch, 581 F.3d 639, 653 (8th Cir. 2009). However, "RLUIPA's language conditioning a state's acceptance of federal funds on its consent to suit for appropriate relief does not unambiguously encompass monetary damages so as to effect a waiver of sovereign immunity from suit for monetary claims by acceptance of the federal money." Id. The Eighth Circuit has explicitly held that states do not waive Eleventh Amendment immunity from suit for monetary damages by accepting federal funds on the conditions set forth in RLUIPA Section 3. Id. at 653-55 (citing Sossamon v. Lone Star State of Texas, 560 F.3d 316, 331 (5th Cir. 2009) (holding "RLUIPA is clear enough to create a right for damages on the cause-of-action analysis, but not clear enough to do so in a manner that abrogates state sovereign immunity from suits for monetary relief"); Cardinal v. Metrish, 564 F.3d 794, 801 (6th Cir. 2009) ("RLUIPA does not contain a clear indication that Congress unambiguously conditioned receipt of federal prison funds on a state's consent to suit for money damages."); Nelson v. Miller, 570 F.3d 868, 884 (7th Cir. 2009) (statutory reference to "'appropriate relief' . . . does not provide the 'unequivocal textual expression' necessary to effect" waiver of state sovereign immunity for money damages)).

Additionally, "RLUIPA does not permit claims against prison officials in their individual capacities." Jihad, 2011 WL 1641885, at *8 (referencing Nelson, 570 F.3d at 888-89; Smith v.

Allen, 502 F.3d 1255, 1275 (11th Cir. 2007); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir.

2009) (finding that RLUIPA does not authorize individual capacity damages claims, because the

definition of "government" did not sufficiently put States on notice of the possibility of such

claims in the Spending Power "contract," pursuant to Pennhurst State Sch. and Hosp. v.

Halderman, 451 U.S. 1, 17 (1981)); Sisney v. Reisch, 533 F. Supp. 2d 952, 966-68 (D.S.D.

2008), reversed on other grounds, 581 F.3d 639 (2009) (addressing the split of authority, and

deciding that RLUIPA does not provide a right of action for damages against individuals); see

also Courtney v. Burnett, 2010 WL 549220, at *10-11 (W.D. Mich. February 10, 2010)

(collecting cases); Pugh v. Goord, 571 F. Supp. 2d 477, 506-07 (S.D.N.Y. 2008) (collecting

case)).

Accordingly, Plaintiffs' RLUIPA claim survives *only* as alleged against the State entity

Defendants and the individual Defendants in their official capacities and *only* insofar as Plaintiffs

seek injunctive relief.[10] The Court recommends **GRANTING** Defendants' motion to dismiss

with respect to Count 4 as alleged against the individual Defendants in their individual

capacities, and with respect to Count 4 as alleged against the State entity Defendants and the

individual Defendants in their official capacities to the extent Plaintiffs seek monetary damages.

The Court recommends **DENYING** Defendants' motion to dismiss with respect to Count 4 as

alleged against the State entity Defendants and the individual Defendants in their official

capacities *as to injunctive relief only*.

## III.   SUBJECT TO ORDER: DEFENDANTS' ALTERNATIVE MOTION TO STAY

In conjunction with the above-discussed motion to dismiss, subject to Report and

Recommendation, Defendants move the Court for an order staying Plaintiffs' claims pending

---

[10] Accordingly, Count 4 arises from Policy 303.020's suit coat prohibition *only*; all claims for injunctive relief arising out of the no-longer-in-effect yarmulke prohibition are necessarily moot.

resolution of <u>Karsjens</u>, No. 11-cv-3659 (DWF/JJK). (Def.'s Mot. to Dismiss [Docket No. 36]). Defendants move the Court for an order staying all surviving claims pending resolution of <u>Karsjens</u>, allegedly because <u>Karsjens</u> involves "similar civil rights claims of MSOP residents" (Defs.' Mem. [Docket No. 38], at 3).

In support of the alternative motion to stay, Defendants simply argue, without any specific showing, that "Plaintiffs' claims [here] are similar to claims advanced on behalf of class members [in <u>Karsjens</u>]" and that "Plaintiff Daywitt is a named plaintiff in the <u>Karsjens</u> litigation." (<u>Id.</u> at 32). Defendants argue in cursory fashion that in <u>Karsjens</u>, Plaintiff Daywitt has alleged First and Fourteenth Amendment violations against various state employees *arising out of the yarmulke prohibition at issue in the present case*. (<u>Id.</u>) However, as already noted, Defendants have not provided the Court with any type of record whatsoever to confirm or deny these conclusory allegations, and it is not the Court's responsibility to complete Defendants' record for them. <u>See in accord.</u>, <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Recognizing that Defendants had failed to sufficiently articulate these issues for the Court or provide the Court with a sufficient record in this regard, at the April 16, 2015, motion hearing, the Court explicitly instructed the parties to meet and discuss Defendants' alternative motion to stay to clarify the precise issues before the Court. However, the parties elected to ignore the Court's explicit directives and simply responded that "any claims pertaining to the wearing of the yarmulke and/or yarmulke prohibition issues that are not dismissed by the Court in this present lawsuit should be stayed pending the resolution of the <u>Karsjens</u> class action litigation." (Letter to Magistrate Judge [Docket No. 48], at 1).

Regardless of the parties' inability to comply with the Court's directives or provide a sufficient record for the Court, the record, as it currently exists, indicates that the *only* potentially viable argument Defendants offer in support of their alternative motion to stay is that Plaintiff Daywitt has allegedly asserted identical claims arising out of the no-longer-in-effect yarmulke prohibition in both the present case and in the <u>Karsjens</u> litigation. However, as articulated herein, the Court recommends dismissing all claims arising from the yarmulke prohibition in the present case. <u>See</u> section II.B. (dismissing any and all claims for declaratory and/or injunctive relief arising from the Policy's no-longer-in-effect yarmulke prohibition as moot); section II.D.2. (dismissing any and all claims for monetary damages arising from prior instances of enforcement of the yarmulke prohibition as alleged against Defendants in their individual capacities in Count 1); section II.E.1. (dismissing any and all claims for monetary damages arising from prior instances of enforcement of the yarmulke prohibition as alleged against Defendants in their official capacities in Count 2); section II.G. (dismissing any and all RLUIPA claims for monetary damages arising from prior instances of enforcement of the yarmulke prohibition as alleged against any and all Defendants in either their individual or official capacities).

Because the present case will no longer contain any claims arising from the no-longer-in-effect yarmulke prohibition upon adoption of the present Report and Recommendation, the Court **DENIES** Defendants' alternative motion to stay as moot.

## IV.     CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

1.  That Defendants' Motion to Dismiss First Amended Complaint, [Docket No. 36], be
    **DENIED** with respect to Count 2's Section 1983 free exercise claim as alleged against

Defendants Jesson, Johnston, and Moser in their official capacities, to the extent Plaintiffs seek injunctive and/or declaratory relief arising from Policy 303.020's suit coat prohibition;

2.  That Defendants' Motion to Dismiss First Amended Complaint, [Docket No. 36], be **DENIED** with respect to Count 4 as alleged against the State entity Defendants and the individual Defendants in their official capacities, to the extent Plaintiffs seek injunctive and/or declaratory relief arising from Policy 303.020's suit coat prohibition; and

3.  That Defendants' Motion to Dismiss First Amended Complaint, [Docket No. 36], be **GRANTED** in all other respects.

**IT IS HEREBY ORDERED:**

That Defendants' alternative motion to stay, [Docket No. 36], is **DENIED as moot**.

Dated: June 17, 2015                                      s/Leo I. Brisbois
                                                         Leo I. Brisbois
                                                         U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.